THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
JEREMY D. MATZ (Cal. Bar No. 199401)
MICHAEL R. WILNER (Cal. Bar No. 156592)
Assistant United States Attorneys
Major Frauds Section
Telephones: (213) 894-0649/0687
Facsimile:  (213) 894-6269
Email: jeremy.matz@usdoj.gov
       michael.wilner@usdoj.gov
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 07-755-DDP |
| Plaintiff, | ) **GOVERNMENT'S TRIAL MEMORANDUM** |
| v. | ) [18 U.S.C. § 371: Conspiracy; |
| JOSEPH ARAM BABAJIAN, et al., | ) 18 U.S.C. § 1344(1): Bank Fraud; |
| Defendants. | ) 18 U.S.C. § 1014: Loan Fraud; |
| | ) 18 U.S.C. § 1956(a)(1): Money Laundering; |
| | ) 18 U.S.C. § 982, 21 U.S.C. § 853: Criminal Forfeiture; |
| | ) 18 U.S.C. § 2: Aiding And Abetting And Causing An Act To Be Done] |
| | ) Trial: June 9, 2009 |
| | )         9:00 a.m. |

Plaintiff United States of America, through its attorneys of record, Assistant United States Attorneys Jeremy D. Matz and Michael R. Wilner, hereby respectfully files its Trial Memorandum in the above-captioned case.

1    The government respectfully requests leave to file

2  additional memoranda as may become appropriate during the course

3  of the trial.

4  DATED: June 16, 2009              Respectfully submitted,

5                                    THOMAS P. O'BRIEN
                                     United States Attorney
6
                                     CHRISTINE C. EWELL
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8
9                                    _____
                                     JEREMY D. MATZ
10                                   MICHAEL R. WILNER
                                     Assistant United States Attorneys
11                                   Major Frauds Section

12                                   Attorneys for Plaintiff
                                     United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                        ii

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . vi

I.   STATUS OF THE CASE . . . . . . . . . . . . . . . . . . 1

    A.   Trial Schedule . . . . . . . . . . . . . . . . . 1

    B.   Length Of Trial . . . . . . . . . . . . . . . . 1

    C.   Pre-Trial Status Of Defendants . . . . . . . . . 1

    D.   Jury Trial . . . . . . . . . . . . . . . . . . . 1

    E.   Witnesses . . . . . . . . . . . . . . . . . . . 1

    F.   Charges . . . . . . . . . . . . . . . . . . . . 1

II.  APPLICABLE STATUTES . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  APPLICABLE LAW . . . . . . . . . . . . . . . . . . . . 3

    A.   Conspiracy: 18 U.S.C. § 371 (Count One) . . . . . . . 3

        1.   Elements . . . . . . . . . . . . . . . . . 3

        2.   Agreement . . . . . . . . . . . . . . . . . 4

        3.   Objects . . . . . . . . . . . . . . . . . . 5

        4.   Overt Acts . . . . . . . . . . . . . . . . 6

        5.   Proof Of Conspiracy . . . . . . . . . . . . 7

        6.   Co-Conspirator Liability . . . . . . . . . 7

    B.   Bank Fraud: 18 U.S.C. § 1344(1) (Count Two) . . . . 7

        1.   Elements . . . . . . . . . . . . . . . . . 7

        2.   Relationship Between Bank Fraud
            And Mail Fraud Statutes . . . . . . . . . . 8

        3.   Scheme To Defraud . . . . . . . . . . . . . 8

        4.   Knowledge And Fraudulent Intent . . . . . . 9

        5.   Federal Insurance . . . . . . . . . . . . . 11

        6.   Co-Schemer Liability And
            Participation In The Scheme . . . . . . . . 11

### TABLE OF CONTENTS (continued)

PAGE(S)

7.   Non-Defenses . . . . . . . . . . . . . . .   12

C.   Loan Fraud: 18 U.S.C. § 1014
     (Counts Three through Thirty)   . . . . . . . . .   12

     1.   Elements . . . . . . . . . . . . . . . . . .   12

     2.   Purpose Of Influencing   . . . . . . . . . .   13

     3.   Unit Of The Offense . . . . . . . . . . . .   13

     4.   Non-Defenses   . . . . . . . . . . . . . . .   14

D.   Money Laundering: 18 U.S.C. § 1956(a)(1)
     (Counts Thirty-One Through Thirty-Three) . . . . .   14

     1.   Elements . . . . . . . . . . . . . . . . . .   14

     2.   Conducts . . . . . . . . . . . . . . . . . .   15

     3.   Transaction . . . . . . . . . . . . . . . .   15

     4.   Financial Transaction . . . . . . . . . . .   15

     5.   Specified Unlawful Activity . . . . . . . .   16

     6.   Promote   . . . . . . . . . . . . . . . . .   16

     7.   Conceal . . . . . . . . . . . . . . . . . .   17

     8.   Referral Fees . . . . . . . . . . . . . . .   17

E.   Criminal Forfeiture: 18 U.S.C. § 982;
     21 U.S.C. § 853 (Counts Thirty-Four
     And Thirty-Five) . . . . . . . . . . . . . . . . .   18

     1.   Notice To Defendants   . . . . . . . . . . .   18

     2.   Forfeiture Proceeding: Role Of Court
          And Jury   . . . . . . . . . . . . . . . . .   19

     3.   Standard Of Proof . . . . . . . . . . . . .   20

     4.   Third Party Interests . . . . . . . . . . .   21

F.   Aiding And Abetting And
     Causing An Act To Be Done: 18 U.S.C. § 2   . . . . .   21

iv

<u>TABLE OF CONTENTS</u> (continued)

PAGE(S)

V. EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . 23

    A.   Victim Testimony . . . . . . . . . . . . . . 23

    B.   Authentication Of Evidence . . . . . . . . . 24

    C.   Duplicates . . . . . . . . . . . . . . . . . 26

    D.   Expert And Opinion Testimony . . . . . . . . 26

    E.   Charts And Summaries . . . . . . . . . . . . 27

    F.   Hearsay . . . . . . . . . . . . . . . . . . 29

        1.   Defendants' Statements . . . . . . . . . 29

        2.   Co-Conspirator Statements . . . . . . . 30

        3.   Prior Testimony . . . . . . . . . . . . 32

        4.   Business Records . . . . . . . . . . . . 33

        5.   Official Public Records . . . . . . . . 34

    G.   Hostile Witnesses And Witnesses Identified
        With Adverse Parties . . . . . . . . . . . . 34

    H.   Impeachment And Rehabilitation Of Witnesses,
        Including Defendants, Under Federal Rules Of
        Evidence 608, 613, and 801 . . . . . . . . . 35

    I.   Cooperating Co-Conspirators . . . . . . . . 36

    J.   Cross-Examination Of Defendants . . . . . . 37

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . 38

1

<u>TABLE OF AUTHORITIES</u>

2  FEDERAL CASES:                                              PAGE(S)

3  <u>Apprendi v. New Jersey</u>,
4        530 U.S. 466 (2000)  . . . . . . . . . . . . . . .  19

<u>Barsky v. United States</u>,
5        339 F.2d 180 (9th Cir. 1964)  . . . . . . . . . .  28

6  <u>Blumenthal v. United States</u>,
         332 U.S. 539 (1947)  . . . . . . . . . . . . . . . 5
7
<u>Bourjaily v. United States</u>,
8        483 U.S. 171 (1987)  . . . . . . . . . . . . .  30, 33

9  <u>Carpenter v. United States</u>,
         484 U.S. 19 (1987)  . . . . . . . . . . . . . . . 9
10
<u>Chavez v. United States</u>,
11       275 F.2d 813 (9th Cir. 1960)  . . . . . . . . . . 6

12 <u>Crawford v. Washington</u>,
         541 U.S. 36 (2004)  . . . . . . . . . . . . . . .  25
13
<u>Farrell v. United States</u>,
14       321 F.2d 409 (9th Cir. 1963)  . . . . . . . . . .  24

15 <u>Kennedy v. Los Angeles Police Dept.</u>,
         901 F.2d 702 (9th Cir. 1990)  . . . . . . . . . .  33
16
<u>Lemon v. United States</u>,
17       278 F.2d 369 (9th Cir. 1960)  . . . . . . . . . .  12

18 <u>Libretti v. United States</u>,
         516 U.S. 29 (1995)  . . . . . . . . . . . . .  19, 20
19
<u>Neder v. United States</u>,
20       527 U.S. 1 (1999)  . . . . . . . . . . . . . . . 8

21 <u>Pereira v. United States</u>,
         347 U.S. 1 (1954)  . . . . . . . . . . . . . . .  23
22
<u>Phillips v. United States</u>,
23       356 F.2d 297 (9th Cir. 1965)  . . . . . . . . . .  24

24 <u>Pinkerton v. United States</u>,
         328 U.S. 640 (1946)  . . . . . . . . . . . . . . . 7
25
<u>Salinas v. United States</u>,
26       522 U.S. 52 (1977)  . . . . . . . . . . . . . .  4, 5

27 <u>United States v. Adefehinti</u>,
         510 F.3d 319 (D.C. Cir. 2008)  . . . . . . . .  25, 26
28

1

### TABLE OF AUTHORITIES (continued)

2

FEDERAL CASES:                                                    PAGE(S)

3

United States v. Alvarez-Valenzuela,
    231 F.3d 1198 (9th Cir. 2000)  . . . . . . . . . . 7

4

United States v. Amrep Corp.,
    545 F.2d 797 (2nd Cir. 1976)   . . . . . . . . . . 10

5

6

United States v. Baker,
    63 F.3d 1478 (9th Cir. 1995)   . . . . . . . . . . 16

7

United States v. Barnett,
    667 F.2d 835 (9th Cir. 1982)   . . . . . . . . . . 22

8

9

United States v. Barragan,
    263 F.3d 919 (9th Cir. 2001)   . . . . . . . . . . 16

10

United States v. Beecroft,
    608 F.2d 753 (9th Cir. 1979)   . . . . . . . . . 9, 10

11

12

United States v. Bellucci,
    995 F.2d 157 (9th Cir. 1993)   . . . . . . . . . . 11

13

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985)  . . . . . . . . 24, 37

14

15

United States v. Blumenthal,
    945 F.2d 280 (9th Cir. 1991)   . . . . . . . . . . 13

16

United States v. Bohonus,
    628 F.2d 1167 (9th Cir. 1980)  . . . . . . . . . 8, 9

17

18

United States v. Bonallo,
    858 F.2d 1427 (9th Cir. 1988)  . . . . . . . . . . 8

19

United States v. Boone,
    951 F.2d 1526 (9th Cir. 1991)  . . . . . . . . . . 4

20

21

United States v. Burreson,
    643 F.2d 1344 (9th Cir. 1981)  . . . . . . . . . . 6

22

United States v. Carrier,
    654 F.2d 559 (9th Cir. 1981)   . . . . . . . . . . 22

23

24

United States v. Castro,
    972 F.2d 1107 (9th Cir. 1992)  . . . . . . . . . . 7

25

United States v. Catabran,
    836 F.2d 453 (9th Cir. 1988)   . . . . . . . . . . 34

26

27

United States v. Catena,
    500 F.2d 1319 (3d Cir. 1974)   . . . . . . . . . . 23

28

1

**TABLE OF AUTHORITIES (continued)**

2    FEDERAL CASES:                                          PAGE(S)

3    United States v. Causey,
          835 F.2d 1289 (9th Cir. 1987) . . . . . . . . .   23
4
     United States v. Childs,
5         5 F.3d 1328 (9th Cir. 1993) . . . . . . . . .   25

6    United States v. Chu Kong Yin,
          935 F.2d 990 (9th Cir. 1991) . . . . . . . . .   24
7
     United States v. Cisneros-Gutierrez,
8         517 F.3d 751 (5th Cir. 2008) . . . . . . . . .   34

9    United States v. Cloud,
          872 F.2d 846 (9th Cir. 1989) . . . . . . . . 4, 8, 9, 11
10
     United States v. Crespo de Llano,
11        838 F.2d 1006 (9th Cir. 1988) . . . . . . . .   30, 31

12   United States v. Cuozzo,
          962 F.2d 945 (9th Cir. 1992) . . . . . . . . .   37
13
     United States v. De Peri,
14        778 F.2d 963 (3rd Cir. 1985) . . . . . . . . .   28

15   United States v. Dearing,
          504 F.3d 897 (9th Cir. 2007) . . . . . . . . .   10
16
     United States v. DiCaro,
17        772 F.2d 1314 (7th Cir. 1985) . . . . . . . . .   32

18   United States v. Dicter,
          198 F.3d 1284 (11th Cir. 1999) . . . . . . . .   20
19
     United States v. Dischner,
20        974 F.2d 1502 (9th Cir. 1992) . . . . . . . . .   8

21   United States v. Ellis,
          460 F.3d 920 (7th Cir. 2006) . . . . . . . . .   25
22
     United States v. Ely,
23        142 F.3d 1113 (9th Cir. 1997) . . . . . . . . .   10

24   United States v. Fleishman,
          684 F.2d 1329 (9th Cir. 1982) . . . . . . . . .   7, 26
25
     United States v. Garcia-Guizar,
26        160 F.3d 511 (9th Cir. 1998) . . . . . . . . .   20

27   United States v. Gardner,
          611 F.2d 770 (9th Cir. 1980) . . . . . . . . .   28
28

TABLE OF AUTHORITIES (continued)

FEDERAL CASES:                                              PAGE(S)

United States v. Garza,
    980 F.2d 546 (9th Cir. 1992) . . . . . . . . . . . 4

United States v. Gay,
    967 F.2d 322 (9th Cir. 1992) . . . . . . . . . . . 38

United States v. Gleason,
    616 F.2d 2 (2d Cir. 1979) . . . . . . . . . . . . 22

United States v. Green,
    745 F.2d 1205 (9th Cir. 1984) . . . . . . . . . . 8

United States v. Hanley,
    190 F.3d 1017 (9th Cir. 1999) . . . . . . . . . . 11

United States v. Hubbard,
    96 F.3d 1223 (9th Cir. 1996) . . . . . . . . . . . 4

United States v. Indelicato,
    800 F.2d 1482 (9th Cir. 1986) . . . . . . . . . . 6

United States v. Jackson,
    845 F.2d 880 (9th Cir. 1988) . . . . . . . . . . . 10

United States v. Jackson,
    882 F.2d 1444 (9th Cir. 1989) . . . . . . . . . . 36

United States v. Jones,
    425 F.2d 1048 (9th Cir. 1979) . . . . . . . . . . 9

United States v. Kennedy,
    564 F.2d 1329 (9th Cir. 1977) . . . . . . . . . . 13

United States v. Kennedy,
    726 F.2d 546 (9th Cir. 1984) . . . . . . . . . . . 14

United States v. Kenofskey,
    243 U.S. 440 (1917) . . . . . . . . . . . . . . . 22

United States v. Krasovich,
    819 F.2d 253 (9th Cir. 1987) . . . . . . . . . . . 5

United States v. Ladum,
    141 F.3d 1328 (9th Cir. 1998) . . . . . . . . . . 15

United States v. Langford,
    802 F.2d 1176 (9th Cir. 1986) . . . . . . . . . . 27

United States v. Laykin,
    886 F.2d 1534 (9th Cir. 1989) . . . . . . . . . . 10

1

**TABLE OF AUTHORITIES (continued)**

2 FEDERAL CASES:                                              PAGE(S)

3 United States v. Lothian,
       976 F.2d 1257 (9th Cir. 1992) . . . . . . . . . . . . 23

4

United States v. Loya,
5      807 F.2d 1483 (9th Cir. 1987) . . . . . . . . . . . . 30

6 United States v. Luttrell,
       889 F.2d 806 (9th Cir. 1989) . . . . . . . . . . . 5, 6

7

United States v. Marbella,
8      73 F.3d 1508 (9th Cir. 1996) . . . . . . . . . . 17, 18

9 United States v. McCormick,
       72 F.3d 1404 (9th Cir. 1995) . . . . . . . . . . . . 14

10

United States v. Medina,
11     940 F.2d 1247 (9th Cir. 1991) . . . . . . . . . . . . 4

12 United States v. Melchor-Lopez,
        627 F.2d 886 (9th Cir. 1980) . . . . . . . . . . . . 4

13

United States v. Melton,
14      689 F.2d 679 (7th Cir. 1982) . . . . . . . . . . . . 11

15 United States v. Meyers,
        847 F.2d 1408 (9th Cir. 1988) . . . . . . . . . . . . 27

16

United States v. Miller,
17      70 F.3d 1353 (D.C. Cir. 1995) . . . . . . . . . . . . 9

18 United States v. Monroe,
        943 F.2d 1007 (9th Cir. 1991) . . . . . . . . . 36, 37

19

United States v. Montgomery,
20      150 F.3d 983 (9th Cir. 1998) . . . . . . . . . . . . 7

21 United States v. Olano,
        62 F.3d 1180 (9th Cir. 1995) . . . . . . . . . . . . 7

22

United States v. Olivo,
23      69 F.3d 1057 (10th Cir. 1995) . . . . . . . . . . . . 35

24 United States v. Oren,
        893 F.2d 1057 (9th Cir. 1990) . . . . . . . . . . . . 12

25

United States v. Ortega,
26      203 F.3d 675 (9th Cir. 2000) . . . . . . . . . . . . 29

27 United States v. Price,
        623 F.2d 587 (9th Cir. 1980) . . . . . . . . . . . . 11

28

TABLE OF AUTHORITIES (continued)

FEDERAL CASES:                                                    PAGE(S)

United States v. Rabinowich,
      238 U.S. 78 (1915)    . . . . . . . . . . . . . . . 6

United States v. Radseck,
      718 F.2d 233 (7th Cir. 1983)    . . . . . . . . . 28

United States v. Ray,
      920 F.2d 562 (9th Cir. 1990)    . . . . . . . . . 33

United States v. Rubino,
      431 F.2d 284 (6th Cir. 1970)    . . . . . . . . . 28

United States v. Ruffin,
      613 F.2d 408 (2d Cir. 1979)    . . . . . . . . . 23

United States v. Sartori,
      443 F.2d 373 (9th Cir. 1971)    . . . . . . . . . 23

United States v. Schmit,
      881 F.2d 608 (9th Cir. 1989)    . . . . . . . . . 31

United States v. Shirley,
      884 F.2d 1130 (9th Cir. 1989)    . . . . . . . . . 28

United States v. Short,
      493 F.2d 1170 (9th Cir. 1974)    . . . . . . . . . 22

United States v. Skeet,
      665 F.2d 983 (9th Cir. 1982)    . . . . . . . . . 27

United States v. Smith,
      891 F.2d 703 (9th Cir. 1989)    . . . . . . . . . . 5, 6

United States v. Smith,
      893 F.2d 1573 (9th Cir. 1990)    . . . . . . . . . 26

United States v. Spawr Optical Research Inc.,
      685 F.2d 1076 (9th Cir. 1982)    . . . . . . . . . 30

United States v. Stuart,
      718 F.2d 931 (9th Cir. 1983)    . . . . . . . . . 36

United States v. Tedder,
      403 F.3d 836 (7th Cir. 2005)    . . . . . . . . . 20

United States v. Tekle,
      329 F.3d 1108 (9th Cir. 2003)    . . . . . . . . . 17

United States v. Thomas,
      586 F.2d 123 (9th Cir. 1978)    . . . . . . . . . . 5

## TABLE OF AUTHORITIES (continued)

**FEDERAL CASES:**                                          **PAGE(S)**

United States v. Vera,
    278 F.3d 672 (7th Cir. 2002)   . . . . . . . . . .   19

United States v. Waldrip,
    981 F.2d 799 (5th Cir. 1993)   . . . . . . . . . .   14

United States v. Wells,
    519 U.S. 482 (1997)   . . . . . . . . . . . . .   13

United States v. Whitworth,
    856 F.2d 1268 (9th Cir. 1988)   . . . . . . . . .   24

United States v. Williams,
    737 F.2d 594 (7th Cir.1984)   . . . . . . . . . .   32

United States v. Yarbrough,
    852 F.2d 1522 (9th Cir. 1988)   . . . . . . . . .   31

Yates v. United States,
    354 U.S. 298 (1957)   . . . . . . . . . . . . . .   6

**STATUTES:**

18 U.S.C. § 2   . . . . . . . . . . . . . . . .   21, 22

18 U.S.C. § 371   . . . . . . . . . . . . . . . .   3

18 U.S.C. § 982   . . . . . . . . . . . . . . . .   18

18 U.S.C. § 1014   . . . . . . . . . . . . . . .   passim

18 U.S.C. § 1344(1)   . . . . . . . . . . . . . .   passim

18 U.S.C. § 1956(a)(1)   . . . . . . . . . . . .   passim

21 U.S.C. § 853   . . . . . . . . . . . . . . . .   18, 21

**RULES:**

Fed. R. Crim. P. 32.2(b)(1)   . . . . . . . . .   19, 20, 21

Fed. R. Evid. 104(a)   . . . . . . . . . . . . .   33

Fed. R. Evid. 608(b)   . . . . . . . . . . . . .   35

Fed. R. Evid. 611(a)   . . . . . . . . . . . . .   28, 34

Fed. R. Evid. 701   . . . . . . . . . . . . . . .   27

Fed. R. Evid. 703   . . . . . . . . . . . . . . .   27

## TABLE OF AUTHORITIES (continued)

**RULES:**                                                        **PAGE(S)**

Fed. R. Evid. 801(d)(2)(A)  . . . . . . . . . . . . . . .  passim

Fed. R. Evid. 803(6)  . . . . . . . . . . . . .  25, 33, 34

Fed. R. Evid. 901(a)  . . . . . . . . . . . . . . . . .  24

Fed. R. Evid. 902(11)  . . . . . . . . . . . .  25, 26, 34

Fed. R. Evid. 1003  . . . . . . . . . . . . . . . . . .  26

Fed. R. Evid. 1006  . . . . . . . . . . . . . . . . . .  27

Fed. R. Evid. 1101(d)(1)  . . . . . . . . . . . . . . .  33

# I.

## STATUS OF THE CASE

### A.   Trial Schedule

The trial against defendants Joseph Aram Babajian, Kyle John Grasso, and Lila Rizk began with jury selection on June 9, 2009. Opening statements and evidence will begin on June 23, 2009.

### B.   Length Of Trial

The estimated time for the government's case-in-chief is approximately six to eight weeks.  The case has been designated a complex case.  This may be shortened if the parties reach factual stipulations and/or stipulations to admit government evidence and exhibits.  The government has requested such stipulations, but defendants have refused.

### C.   Pre-Trial Status Of Defendants

Defendants are on bond pending trial.

### D.   Jury Trial

Jury trial has not been waived.

### E.   Witnesses

The government expects to call approximately 60-70 witnesses in its case-in-chief.  This may be reduced if the parties reach factual stipulations and/or stipulations to admit government evidence and exhibits.

The government may call additional witnesses in rebuttal, depending on whether defendants call any witnesses and on what testimony they give.

### F.   Charges

The Indictment is in 35 counts.  It charges Babajian, Grasso, and Rizk with conspiracy to commit bank fraud and loan

fraud; bank fraud; loan fraud; and criminal forfeiture.   It also
charges Babajian and Grasso, but not Rizk, with money laundering.

## II.

## APPLICABLE STATUTES

Because the Indictment alleges numerous statutory
violations, this Trial Memorandum does not set forth the texts of
the statutes.   The government will submit the complete texts of
the statutes with its proposed jury instructions.

## III.

## FACTS

In a highly sophisticated, complex, and fraudulent scheme,
which lasted about three years, Babajian, Grasso, and Rizk (along
with seven co-conspirators who have pleaded guilty and one
unindicted co-conspirator) defrauded multiple lenders out of
approximately $40,000,000 to $50,000,000.

Defendants' fraud was a mortgage fraud.   Because the fraud
was so intricate and highly complex, this Trial Memorandum does
not recount all of the details or facts that the evidence will
establish.   Instead, the government refers the Court to the
Indictment, and in particular to the section entitled "Overview
Of The Criminal Conduct" (pages 18 through 23 of the Indictment).
As stated therein, defendants and their co-conspirators
perpetrated the fraud by supplying false documentation, including
bogus purchase contracts and appraisals, in order to deceive the
victim lenders into unwittingly funding tens of millions of
dollars in fraudulently inflated loans on high-end homes in
exclusive California communities.   Babajian's, Grasso's, and
Rizk's roles in the scheme included (1) finding homes that could

be purchased by obtaining inflated loans; (2) negotiating purchase contracts that required the original home sellers and their real estate agents to keep the homes' true purchase prices confidential; (3) inflating appraisals of the homes; (4) using the conspirators' in-house escrow companies to receive the inflated loan proceeds; (5) concealing and falsifying information about the homes in the Multiple Listing Service ("MLS") database; and (6) securing the title insurance that was a necessary condition to the funding of the loans.

The government will prove the scheme and defendants' participation in it through the testimony of underwriters, representatives from the victim lenders, home sellers, real estate agents and their staff, witnesses from the MLS, appraisers, cooperating co-conspirators, straw borrowers, attorneys, title officers, escrow officers, an appraisal expert witness, and federal agents and accountants who will testify as summary witnesses, among other witnesses.  The government will also introduce documentary evidence and summary diagrams, flow charts, and spreadsheets.

IV.

APPLICABLE LAW

A.   Conspiracy: 18 U.S.C. § 371 (Count One)

1.   Elements

The elements of a violation of Title 18, United States Code, Section 371 are: (1) there was an agreement between two or more persons to commit at least one crime as charged in the Indictment; (2) defendants became members of the conspiracy knowing of at least one of its objects and intending to help

3

1  accomplish it; and (3) one of the members of the conspiracy
2  performed at least one overt act for the purpose of carrying out
3  the conspiracy, with all members of the jury agreeing on a
4  particular overt act that was committed.   9th Cir. Crim. Jury
5  Instr. 8.16 (2003); United States v. Garza, 980 F.2d 546, 552
6  (9th Cir. 1992); United States v. Medina, 940 F.2d 1247, 1250
7  (9th Cir. 1991).
8      2.   Agreement
9      The evidentiary requirement for establishment of an
10  agreement in the conspiracy context is considerably more lax than
11  in the case of an enforceable contract.   United States v.
12  Melchor-Lopez, 627 F.2d 886, 890 (9th Cir. 1980).
13      To support a conspiracy conviction, the agreement need not
14  be explicit; it may be inferred from the defendant's acts
15  pursuant to a fraudulent scheme or from other circumstantial
16  evidence.  United States v. Cloud, 872 F.2d 846, 852 (9th Cir.
17  1989); United States v. Boone, 951 F.2d 1526, 1543 (9th Cir.
18  1991).  Its existence may be inferred from evidence of a concert
19  of action, all the parties working together understandingly, with
20  a single design for the accomplishment of a common purpose.
21  United States v. Hubbard, 96 F. 3d 1223, 1226 (9th Cir. 1996).
22  Here, the government will prove defendants' and their
23  co-conspirators' agreement through their actions in concert, as
24  well as through co-conspirator testimony.
25      A conspiracy may exist even if a conspirator does not agree
26  to commit each and every part of the substantive offense.
27  Salinas v. United States, 522 U.S. 52, 63 (1977).  One can be a
28  conspirator by agreeing to facilitate only some of the acts

4

leading to the substantive offense.  Here, the government will prove that defendants agreed to commit both objects of the conspiracy (bank fraud and loan fraud), as they actually committed both objects.

A conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.  Id. at 65. Here, defendants actually did commit the substantive crimes.

It is not necessary for the government to show that the defendant knew the exact scope of the conspiracy, the identity and role of each of the coconspirators, or the details of the operations of any particular plan.  United States v. Thomas, 586 F.2d 123, 132 (9th Cir. 1978).  However, the government must still prove that the defendant was aware of the essential nature of the plan.  Blumenthal v. United States, 332 U.S. 539, 557 (1947); United States v. Krasovich, 819 F.2d 253, 255-56 (9th Cir. 1987).

3.  Objects

It is well established that a conspiracy charge may allege multiple objects.  See United States v. Smith, 891 F.2d 703, 713 (9th Cir. 1989) (a charge of conspiracy to commit more than one offense may be included in a single count without violating the general rule against duplicity).  In such cases, the government must prove that the defendant was engaged in a conspiracy to commit at least one of the alleged objects.  See United States v. Luttrell, 889 F.2d 806, 810-11 (9th Cir. 1989), vacated in part on other grounds, 923 F.2d 764 (9th Cir. 1991).

1   Where a conspiracy with multiple objects is charged, a

2   unanimity instruction should be given.  See Smith, 891 F.2d at

3   709 (approving instruction that "the jury must unanimously agree

4   upon the same objective as having been proved beyond a reasonable

5   doubt").  Here, the conspiracy count alleges a 2-object

6   conspiracy.  The government will ask the Court to give a

7   unanimity instruction.

8       4.   Overt Acts

9       An overt act is an outward act done in pursuance of the

10  crime and in manifestation of an intent or design, looking toward

11  the accomplishment of the crime.  Chavez v. United States, 275

12  F.2d 813, 817 (9th Cir. 1960).  The overt act need not be of

13  itself a criminal act; still less need it constitute the very

14  crime that is the object of the conspiracy.  United States v.

15  Rabinowich, 238 U.S. 78, 86 (1915).  Nor need it appear that all

16  the conspirators joined in the overt act.  Id.  The function of

17  the overt act in a conspiracy prosecution is simply to manifest

18  that the conspiracy is at work, and is neither a project still

19  resting solely in the minds of the conspirators nor a fully

20  completed operation no longer in existence.  Yates v. United

21  States, 354 U.S. 298, 334 (1957).

22      The government need prove only one of the overt acts charged

23  in the indictment.  See Luttrell, 889 F.2d at 809; United States

24  v. Indelicato, 800 F.2d 1482, 1483 (9th Cir. 1986); United States

25  v. Burreson, 643 F.2d 1344, 1348 (9th Cir. 1981).  Here, the

26  conspiracy count alleges 153 overt acts.  The government will ask

27  the Court to give a unanimity instruction.

28

1          5.   Proof Of Conspiracy

2          The government does not have to present direct evidence of

3    the conspiracy.   Circumstantial evidence and the inferences drawn

4    from that evidence will sustain a conspiracy conviction.   United

5    States v. Castro, 972 F.2d 1107, 1110 (9th Cir. 1992).

6          Once a conspiracy is established, evidence of only a slight

7    connection with it is sufficient to establish a defendant's

8    participation in it.   United States v. Olano, 62 F.3d 1180, 1194

9    (9th Cir. 1995).

10         The order of proof in a conspiracy case is a matter

11   committed to the sound discretion of the trial judge.   See United

12   States v. Fleishman, 684 F.2d 1329, 1338 (9th Cir. 1982).

13         6.   Co-Conspirator Liability

14         Each member of a conspiracy is responsible for the actions

15   of the other conspirators performed during the course and in

16   furtherance of the conspiracy.   If one member of a conspiracy

17   commits a crime in furtherance of a conspiracy, the other members

18   have also, under the law, committed the crime.   9th Cir. Crim.

19   Jury Instr. 8.20 (2003); Pinkerton v. United States, 328 U.S.

20   640, 646 (1946); United States v. Alvarez-Valenzuela, 231 F.3d

21   1198, 1202-1203 (9th Cir. 2000); United States v. Montgomery, 150

22   F.3d 983, 996-997 (9th Cir. 1998).

23         Here, the government will ask the Court to give a

24   Pinkerton instruction as to Counts Three through Thirty.

25   B.   Bank Fraud: 18 U.S.C. § 1344(1) (Count Two)

26         1.   Elements

27         The elements of a violation of Title 18, United States Code,

28   Section 1344(1) are: (1) defendants knowingly carried out a

7

scheme to defraud a financial institution as to a material matter; (2) defendants did so with intent to defraud; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation ("FDIC").  18 U.S.C. § 1344(1); Cloud, 872 F.2d at 850.

### 2.   Relationship Between Bank Fraud And Mail Fraud Statutes

The legislative history of Section 1344 shows that Congress intended it to have the same "broad scope" as the mail fraud statute.  Accordingly, case law construing the mail fraud statute is fully applicable to Section 1344.  See Neder v. United States, 527 U.S. 1, 20-21 (1999); United States v. Bonallo, 858 F.2d 1427, 1432 (9th Cir. 1988).

### 3.   Scheme To Defraud

The term "scheme to defraud" is not defined according to any technical standard; rather, the standard is a reflection of moral uprightness, fundamental honesty, and fair play and right dealing in the general and business life of the members of society.  See United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir. 1980).

A scheme to defraud includes any plan or course of conduct reasonably calculated to deceive persons of ordinary prudence and comprehension.  See United States v. Green, 745 F.2d 1205, 1207 (9th Cir. 1984); Bohonus, 628 F.2d at 1172.

The government is not required to prove that the scheme succeeded, or that defendants caused an actual loss of money or property.  See United States v. Dischner, 974 F.2d 1502, 1521 (9th Cir. 1992) (statute requires only a "scheme to defraud," not the success of the fraud; government need not prove actual reliance by or injury to the victim).  In this case, however, the

8

1  government will prove that defendants and their co-conspirators
2  caused several banks to lose between $40,000,000 and $50,000,000.
3  One of the victim lenders encompassed by Count Two is GreenPoint
4  Bank.  (Indictment ¶¶ 3, 29(a), 72).  The government expects
5  defendants to contend that GreenPoint Bank did not sustain a loss
6  on loans obtained by Grasso with the assistance of his
7  co-conspirators.  The government will ask the Court to instruct
8  the jury that the absence of a loss on these loans is not a
9  defense to Count Two or to the related loan fraud counts (Counts
10  Three through Seven).

11       For a defendant to be guilty of executing a scheme to
12  defraud, it is sufficient that the defendant participated in the
13  scheme.  Cloud, 872 F.2d at 850; United States v. Miller, 70 F.3d
14  1353, 1355 (D.C. Cir. 1995) (Section 1344(1) makes it unlawful to
15  participate in a scheme to defraud a financial institution).

16       **4.   Knowledge And Fraudulent Intent**

17       Intent to defraud is an essential ingredient of any scheme
18  to defraud.  See Bohonus, 628 F.2d at 1172; United States v.
19  Beecroft, 608 F.2d 753, 757 (9th Cir. 1979).  Intent to defraud
20  means an intent to obtain money or property from someone by
21  deceiving or cheating him.  However, the defendant need not
22  intend to cause an actual loss to the victim.  See Carpenter v.
23  United States, 484 U.S. 19, 26-27 (1987).

24       Fraudulent intent may be, and often must be, shown by
25  circumstantial evidence.  See United States v. Jones, 425 F.2d
26  1048, 1058 (9th Cir. 1979).  Because of the difficulty in proving
27  intent, courts have traditionally held that "[a]ny proof,
28  properly connected to the defendants, which establishes the

manner in which the fraudulent scheme was carried into execution
or the intent of the parties in relation thereto is properly
admissible." United States v. Amrep Corp., 545 F.2d 797, 800
(2nd Cir. 1976); see also United States v. Jackson, 845 F.2d 880,
884 (9th Cir. 1988).

Fraudulent intent may be inferred from evidence that:
(1) defendants knowingly made or caused to be made false
representations, see Beecroft, 608 F.2d at 757; (2) defendants
engaged in a scheme reasonably calculated to deceive persons of
ordinary prudence and comprehension, see id.; and (3) defendants
sought to conceal the true nature of their activities or
transactions, see United States v. Laykin, 886 F.2d 1534, 1540
(9th Cir. 1989).

Intent to defraud may be proven through reckless
indifference to the truth or falsity of statements. United
States v. Dearing, 504 F.3d 897, 903 (9th Cir. 2007) (in health
care fraud case, affirming jury instruction that defendant's
state of mind could be proven "by [a] showing that the defendant
knowingly lied with intent to defraud" or that he "acted with
reckless indifference to the truth or falsity of the
statements"); United States v. Ely, 142 F.3d 1113, 1121 (9th Cir.
1997) (reversing dismissal of bank fraud counts; stating that
"[r]eckless disregard equally satisfies the intent required under
§ 1344").

Here, the government will prove defendants' fraudulent
intent through evidence that defendants, among other things:
(1) caused false and misleading information to be entered into
the MLS; (2) inflated the values of homes by as much as 300% in

appraisals; (3) caused home sellers and their real estate agents
to hide and conceal the homes' true purchase prices; and
(4) caused title companies to issue false title reports and
inflated title insurance on the loans.

### 5.   Federal Insurance

A certificate of insurance by the FDIC or uncontradicted
testimony of an officer of the financial institution concerning
its insured status is sufficient to establish that the
institution is federally insured.  United States v. Bellucci, 995
F.2d 157, 160 (9th Cir. 1993).

### 6.   Co-Schemer Liability And Participation In The Scheme

One who participates in a scheme or artifice to defraud with
knowledge of its fraudulent character, even if that participation
is limited, is deemed to have participated in the entire scheme
and is criminally liable for all the acts of his or her
co-schemers that are within the general scope of the scheme.  9th
Cir. Crim. Jury Instr. 8.101A (2003); United States v. Hanley,
190 F.3d 1017, 1022-23 (9th Cir. 1999).

To be guilty of participation in a fraudulent scheme, a
defendant need not be the mastermind of the scheme.  See United
States v. Price, 623 F.2d 587, 591 (9th Cir. 1980), overruled on
other grounds by United States v. De Bright, 730 F.2d 1255, 1259
(9th Cir. 1984).  A defendant need not have participated in every
aspect or have been aware of every detail of the scheme.  United
States v. Melton, 689 F.2d 679, 684 (7th Cir. 1982).

It is not determinative that a defendant was not on hand at
the launching of the scheme if he or she joined the scheme later.
Cloud, 872 F.2d at 850.

1    Here, the government will ask the Court to give a co-schemer
2    liability instruction as to Counts Three through Thirty.

3    **7.    Non-Defenses**

4    A belief that a victim will be repaid and will sustain no
5    loss, even if held in good faith, is no defense to a charge of
6    bank fraud.  See United States v. Oren, 893 F.2d 1057, 1062-63
7    (9th Cir. 1990).  The government will ask the Court to instruct
8    the jury that defendants' intent to repay any of the loans at
9    issue here, even if true, is no defense to a charge of bank
10    fraud.

11    The victims' negligence or gullibility is not a defense to a
12    charge of fraud.  See Lemon v. United States, 278 F.2d 369, 373
13    (9th Cir. 1960) (statute "protects the naive as well as the
14    worldly-wise, and the former are more in need of protection than
15    the latter").  Here, the Court has already ruled that "negligence
16    is not an affirmative defense to fraud" and that "[d]efendants
17    are thus not entitled to make erroneous legal arguments regarding
18    negligence[.]"  See Order On The Government's Motions in Limine
19    at 11, filed February 17, 2009.  The Court also stated that the
20    parties may prepare and request an appropriate jury instruction.
21    Id.  The government will ask the Court to instruct the jury that
22    carelessness or negligence on the part of the victims, even if
23    true, is no defense to a charge of bank fraud.

24    **C.    Loan Fraud: 18 U.S.C. § 1014 (Counts Three Through Thirty)**

25    **1.    Elements**

26    The elements of a violation of Title 18, United States Code,
27    Section 1014 are: (1) defendant made a false statement or report,
28    or willfully overvalued any land, property, or security, to a

1   federally insured bank; (2) defendant made the false statement or

2   report to the bank knowing it to be false; and (3) defendant did

3   so for the purpose of influencing in any way the action of the

4   bank.  The government need not prove that the bank was, in fact,

5   influenced or misled.  What must be proved is that the defendant

6   intended to influence the bank by the false statement.  9th Cir.

7   Crim. Jury Instr. 8.67 (2003).

8        Materiality is not an element of 18 U.S.C. § 1014.  United

9   States v. Wells, 519 U.S. 482, 496-97 (1997).

10       **2.   Purpose Of Influencing**

11       The phrase "for the purpose of influencing" is intended to

12  define the quality of the requisite intent, not to immunize a

13  defendant from criminal liability merely because a bank officer

14  was a party to the scheme.  The essence of the offense in the

15  making of the false statement with the intent to influence the

16  lender is not dependent on the accomplishment of that purpose.

17  It is a crime of subjective intent requiring neither reliance by

18  the bank officers nor an actual defrauding.  United States v.

19  Kennedy, 564 F.2d 1329, 1340-41 (9th Cir. 1977).

20       The only intent that needs to be shown is the intent to

21  influence.  The government need not show an intent to deceive.

22  United States v. Blumenthal, 945 F.2d 280, 282-83 (9th Cir.

23  1991).

24       **3.   Unit Of The Offense**

25       Separate sentences may be imposed for each false document or

26  set of false documents submitted to the bank.  This approach is

27  consistent with § 1014's language.  The statute prohibits

28  knowingly making any false statement to a bank.  It is the false

13

statement, not the anticipated loan, which defines the crime.
United States v. Kennedy, 726 F.2d 546, 547-48 (9th Cir. 1984)
(rejecting multiplicity challenge to three § 1014 counts based on
three separate documents that all repeated the same false
statement and were executed to obtain a single loan).

### 4.   Non-Defenses

Loss need not be proven to convict a defendant for bank
fraud or making a false statement to a bank, and evidence that
there was no loss is not a defense to either of those crimes.
United States v. Waldrip, 981 F.2d 799, 806 (5th Cir. 1993).

The government need only prove that the defendant made the
false statement in order to influence the bank.  Whether the
defendant entertains an honest intent to repay the bank is
irrelevant.  United States v. McCormick, 72 F.3d 1404, 1409 (9th
Cir. 1995) (affirming jury instruction that "it is not a defense
to [18 U.S.C. § 1014] that the defendant entertained an honest
intent to repay the bank").  The government will ask for a
similar jury instruction as to all defendants and all § 1014
counts.

### D.   Money Laundering: 18 U.S.C. § 1956(a)(1) (Counts Thirty-One Through Thirty-Three)

### 1.   Elements

The elements of a violation of Title 18, United States Code,
Section 1956(a)(1) are: (1) defendant conducted a financial
transaction that involved the proceeds of specified unlawful
activity; (2) defendant knew that the property involved in the
financial transaction represented the proceeds of some form,
though not necessarily which form, of prior activity that

14

constituted a felony under state or federal law; and
(3) defendant either (a) acted with the intent to promote the
carrying on of specified unlawful activity; or (b) knew that the
transaction was designed in whole or in part to conceal or
disguise the nature, location, source, ownership, or control of
the proceeds of specified unlawful activity.  9th Cir. Crim. Jury
Instr. 8.120, 8.121 (2003).

    2.  **Conducts**

    The term "conducts" includes initiating, concluding, or
participating in initiating or concluding a transaction.  18
U.S.C. § 1956(c)(2).

    3.  **Transaction**

    The term "transaction" includes a transfer or other
disposition, and with respect to a financial institution includes
a deposit, withdrawal, transfer between accounts, or any other
payment, transfer, or delivery by, through, or to a financial
institution, by whatever means effected.  18 U.S.C. § 1956(c)(3).

    4.  **Financial Transaction**

    The term "financial transaction" includes, <u>inter</u> <u>alia</u>, (A) a
transaction which in any way or degree affects interstate or
foreign commerce involving (i) the movement of funds by wire or
other means, or . . . (iii) the transfer of title to any real
property; and (B) a transaction involving the use of a financial
institution which is engaged in, or the activities of which
affect, interstate or foreign commerce in any way or degree.  18
U.S.C. § 1956(c)(4).

    Proof that a transaction employs a utility of interstate
commerce is sufficient to satisfy § 1956(c)(4)(B).  <u>United States</u>

v. Ladum, 141 F.3d 1328, 1339 (9th Cir. 1998).  Evidence of a
transaction involving a financial institution insured by the FDIC
is also sufficient to meet § 1956's interstate commerce
requirement.  Id.  Here, the government will introduce FDIC
certifications to establish that the banks involved in the
transactions charged as money laundering were engaged in
interstate commerce.  Therefore, those transactions constitute
financial transactions under 18 U.S.C. § 1956(c)(4)(B).

### 5. Specified Unlawful Activity

Specified unlawful activity includes bank fraud in violation
of 18 U.S.C. § 1344 and loan fraud in violation of 18 U.S.C.
§ 1014.  18 U.S.C. §§ 1956(c)(7)(A), 1956(c)(7)(D), 1961(1)(B).

### 6. Promote

To prove an intent to promote the carrying on of specified
unlawful activity, the government is not required to prove that
the defendant reinvested illicit proceeds in a criminal
enterprise.  The Ninth Circuit has explicitly rejected the view
that intent to promote the carrying on of the illegal activity
can only be found when the proceeds are plowed back into the
activity.  Rather, the Ninth Circuit has consistently held that a
jury may infer intent to promote the illegal activity from
evidence that illicit proceeds have been transferred.  United
States v. Barragan, 263 F.3d 919, 923 (9th Cir. 2001).  See also
United States v. Baker, 63 F.3d 1478, 1494 (9th Cir. 1995)
(defendant's payments to suppliers of contraband goods showed
intent to promote; defendant could not have continued illegal
trafficking without paying suppliers).

### 7.   Conceal

The necessary concealment is that of the source of the funds, not the identity of the money-launderer.  <u>United States v. Tekle</u>, 329 F.3d 1108, 1114 (9th Cir. 2003) (affirming concealment money laundering convictions against sufficiency-of-evidence challenge, where defendant deposited $1.6 million in cash from narcotics trafficking into 8 separate bank accounts, always in increments less than $10,000, then used cash to buy home; rejecting defendant's argument that he had no intent to conceal illegal nature of funds because transactions were open, notorious, and did not disguise his identity).

### 8.   Referral Fees

The Ninth Circuit has upheld money laundering convictions based on the payment of "referral fees."  <u>United States v. Marbella</u>, 73 F.3d 1508, 1514 (9th Cir. 1996) (settlement of fraudulent medical claims, constituting mail fraud, generated proceeds that triggered payment of referral fees to "cappers" who brought medical patients to defendant attorney).  In <u>Marbella</u>, "[t]he referral fee payment scheme promoted the underlying mail fraud activity by encouraging future cases from cappers.  The scheme also promoted the underlying fraud by concealing the use of cappers from the insurers."  <u>Id.</u>  Furthermore, in such cases, "the government [does] not have to establish that the proceeds used in the financial transaction to pay the referral fees were part of the actual dollars obtained from the illegal activity . . . .  The government need not prove the account used to pay the fees maintained a positive balance between the time the illegal proceeds were deposited and when the referral fees were

17

paid." <u>Id.</u> at 1516.

Here, the evidence will show that Babajian and Grasso caused the payments charged in Counts Thirty-One through Thirty-Three in order (1) to promote the bank fraud and loan fraud scheme, and (2) to conceal and disguise the proceeds of that scheme.  The payments promoted the scheme by helping to secure the title insurance that was a necessary condition to the funding of the loans.  By causing the payments to be falsely characterized as "referral fees," Babajian and Grasso intended to conceal and disguise the proceeds of the scheme.

**E.   Criminal Forfeiture: 18 U.S.C. § 982; 21 U.S.C. § 853 (Counts Thirty-Four And Thirty-Five)**

**1.   Notice To Defendants**

Pursuant to Federal Rules of Criminal Procedure 7(c)(2) and 32.2(a), Counts Thirty-Four and Thirty-Five of the Indictment put defendants on notice that the government seeks forfeiture of property in the event defendants are convicted of bank fraud, loan fraud, a conspiracy to commit either of those offenses, or money laundering.  Count Thirty-Four seeks forfeiture of all property which constitutes or is derived from proceeds defendants obtained from the fraud and conspiracy offenses, and a personal money judgment against defendants equal to the total value of such proceeds.  18 U.S.C. §§ 982(a)(2)(A), 982(b).  Count Thirty-Five seeks forfeiture of all property involved in or traceable to the money laundering counts, as well as a personal money judgment against Babajian and Grasso equal to the total value of such property.  18 U.S.C. § 982(a)(1).

   2.   **Forfeiture Proceeding: Role Of Court And Jury**

Where the government seeks the forfeiture of a defendant's property as a consequence of the defendant's conviction, the court must conduct a proceeding to determine the forfeitability of the property "as soon as practicable" after a verdict or finding of guilty. Fed. R. Crim. P. 32.2(b)(1). During the forfeiture phase of the trial:

> If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

Id.

There is no constitutional right to trial by jury on forfeiture issues. Libretti v. United States, 516 U.S. 29, 49 (1995) (because forfeiture is part of sentencing, the Sixth Amendment does not require a jury determination); United States v. Vera, 278 F.3d 672, 673 (7th Cir. 2002) (holding that Apprendi v. New Jersey, 530 U.S. 466 (2000), does not disturb the rule that forfeiture may be decided by the judge on a preponderance standard; noting that criminal forfeiture has no prescribed statutory maximum). Accordingly, Rule 32.2 governs the jury's role. Where the guilty verdict was returned by a jury, and where the government seeks forfeiture of specific property, a defendant may request that the jury be retained to determine the "requisite nexus" between the specific property and the offense. Fed. R. Crim. P. 32.2(b)(4). However, no parallel provision exists for determination of the amount of a money judgment. Instead, the Rule provides that "if the government seeks a personal money

1  judgment, the court must determine the amount of money that the

2  defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1).

3      Therefore, to the extent that the government seeks personal

4  money judgments against defendants, the Court is to determine the

5  amount of money the defendants should be ordered to pay in

6  forfeiture. United States v. Tedder, 403 F.3d 836, 840-41 (7th

7  Cir. 2005) (employing same reasoning above to conclude there is

8  no right to a jury trial on the amount of a money judgment). As

9  the determination is to be made by the Court, it need not occur

10  immediately, but instead may be made at a separate proceeding at

11  or prior to sentencing.

12      **3.   Standard Of Proof**

13      Forfeiture is an element of the sentence on a count of

14  conviction, not a substantive offense. Libretti, 516 U.S. at 49.

15  Accordingly, the forfeitability of property or the amount of a

16  money judgment must be proved by a preponderance of the evidence.

17  See, e.g., United States v. Garcia-Guizar, 160 F.3d 511, 518 (9th

18  Cir. 1998) (preponderance standard is constitutional because

19  criminal forfeiture is not a separate offense, but only an

20  additional penalty for an offense that was established beyond a

21  reasonable doubt); United States v. Dicter, 198 F.3d 1284, 1289

22  (11th Cir. 1999) (because forfeiture is part of sentencing,

23  preponderance standard applies).

24      Here, the government anticipates that during the forfeiture

25  phase it will rely primarily on the evidence already presented

26  during the guilt phase, because much of the evidence probative of

27  guilt also supports forfeiture. To the extent it deems

28  necessary, the government may present additional evidence

1  pertaining to forfeiture during the forfeiture phase.  The

2  defendants may also present evidence during the forfeiture phase,

3  which the government may seek to rebut just as in the guilt

4  phase.  Fed. R. Crim. P.  32.2(b)(1) ("The court's determination

5  may be based on evidence already in the record . . . or, if the

6  forfeiture is contested, on evidence or information presented by

7  the parties at a hearing after the verdict or a finding of

8  guilt.").

9      **4.   Third Party Interests**

10     The determination of the amount the defendants are ordered

11 to pay will serve as the basis for the Court to enter a

12 preliminary order of forfeiture.  Fed. R. Crim. P. 32.2(b)(2),

13 (3).  To the extent that the government locates or identifies

14 specific forfeitable property after entry of the preliminary

15 order of forfeiture (see Rule 32.2(e)(1)(A)), the extent of

16 defendants' interests in such property *vis-a-vis* third parties is

17 litigated separately in an "ancillary proceeding."  In such a

18 proceeding, the Court (without a jury) will decide the claims of

19 any third parties who assert interests in specific property to be

20 forfeited.  21 U.S.C. § 853(n)(2).  There is no ancillary

21 proceeding to the extent the forfeiture orders consist of money

22 judgments.  Rule 32.2(c)(1).

23 **F.   Aiding And Abetting And Causing An Act To Be Done:
      18 U.S.C. § 2**

24

25     Aiding and abetting, as used in 18 U.S.C. § 2(a), means to

   assist the perpetrators of a crime.  An abettor is one who, with

26
   <u>mens</u> <u>rea</u>, commands, counsels, or otherwise encourages the

27
   perpetrator to commit the crime.  An aider and abettor is liable

28

for any criminal act which in the ordinary course of things was the natural or probable consequence of the crime that he advised or commanded, although such consequence may not have been intended by him.  It is not essential that the accessory know the modus operandi of the principal.  It is also not necessary that the person accused of aiding and abetting know all the details of the crime or all the persons who were perpetrating the crime. United States v. Barnett, 667 F.2d 835, 841 (9th Cir. 1982).

Under 18 U.S.C. § 2(a), it is the aider and abettor's state of mind, rather than the state of mind of the principal, that determines the former's liability.  The prosecution is not required to prove that the aider and abettor was aware of all of the details of the planned offense.  The aider and abettor may be liable for the natural and probable consequences of the crime that he aided and abetted.  United States v. Short, 493 F.2d 1170, 1172 (9th Cir. 1974).

Under 18 U.S.C. § 2(b), a person who, with the requisite intent, causes another to commit a criminal act is liable for that act as if he had committed it personally.  United States v. Gleason, 616 F.2d 2, 20 (2d Cir. 1979).

As used in Section 2(b), the word "cause" has a broad application; it means not only to act through an intermediary, but also more generally to procure or bring about the commission of a crime.  See United States v. Kenofskey, 243 U.S. 440, 443 (1917); United States v. Carrier, 654 F.2d 559, 561 (9th Cir. 1981).  A person who willfully does or fails to do something which, in the ordinary course, would result in another person doing something the law forbids, is responsible for "causing" the

22

act.  <u>Pereira v. United States</u>, 347 U.S. 1, 8-9 (1954); <u>United States v. Lothian</u>, 976 F.2d 1257, 1262 (9th Cir. 1992).

As the legislative history of Section 2 makes clear, Section 2(b) was added to the statute to "remove[ ] all doubt that one who puts in motion or assists in the illegal enterprise . . . is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense."  1948 Revisor's Note; <u>United States v. Causey</u>, 835 F.2d 1289, 1292 (9th Cir. 1987).

Proof that the defendant was the planner, instigator, and an intended beneficiary of the scheme is sufficient to establish his liability under Section 2(b).  <u>United States v. Sartori</u>, 443 F.2d 373 (9th Cir. 1971).

A person who causes another to commit a criminal act is guilty as a principal under Section 2(b), regardless of the culpability of the party actually committing the act.  <u>See</u> <u>Causey</u>, 835 F.2d at 1292; <u>United States v. Ruffin</u>, 613 F.2d 408, 412 (2d Cir. 1979); <u>United States v. Catena</u>, 500 F.2d 1319, 1323 (3d Cir. 1974).  In particular, a person who causes another to commit a criminal act is guilty as a principal under Section 2(b) even though the party actually committing the criminal act lacked the required intent to himself be guilty of the crime.  <u>See</u> <u>Causey</u>, 835 F.2d at 1292.

**V.**

**EVIDENTIARY ISSUES**

A.   **Victim Testimony**

In a fraud prosecution, victims may testify about the defendant's misrepresentations and how much money they lost

23

because of the scheme.  The state of mind of a victim is not opinion testimony.  Rather, it bears on whether the scheme was capable of misleading the recipients.  <u>Phillips v. United States</u>, 356 F.2d 297, 307-09 (9th Cir. 1965); <u>Farrell v. United States</u>, 321 F.2d 409, 419-20 (9th Cir. 1963).

While the government is not required to prove that someone was actually defrauded, testimony that the defendant's representations did, in fact, deceive is admissible to prove the fraudulent nature of the scheme and the defendant's connection to it.  <u>Phillips</u>, 356 F.2d at 308.  Here, the government intends to call witnesses from the victim lenders that lost money in defendants' fraudulent scheme.  These witnesses will testify about the extent of the banks' losses.  The government also intends to introduce documentary evidence of the victim lenders' losses.

**B.   Authentication Of Evidence**

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.  Fed. R. Evid. 901(a); <u>United States v. Whitworth</u>, 856 F.2d 1268, 1282-83 (9th Cir. 1988).  When proffered evidence is challenged on grounds of authentication or identification, the evidence should be admitted once the government makes a prima facie showing of authenticity.  <u>United States v. Chu Kong Yin</u>, 935 F.2d 990, 996 (9th Cir. 1991); <u>United States v. Black</u>, 767 F.2d 1334, 1342 (9th Cir. 1985).

Extrinsic evidence of authenticity (<u>e.g.</u>, custodian testimony) as a condition precedent to admissibility is not

1  required with respect to a domestic business record that would be

2  admissible under Federal Rule of Evidence 803(6), if the record

3  is accompanied by a written declaration of its custodian or other

4  qualified person, certifying that the record meets the criteria

5  of Rule 803(6).  Fed. R. Evid. 902(11).  A party intending to

6  offer a record into evidence under Rule 902(11) must provide

7  written notice of that intention to all adverse parties, and must

8  make the record and declaration available for inspection

9  sufficiently in advance of their offer into evidence to provide

10  an adverse party with a fair opportunity to challenge them.  Id.

11      To lay an adequate foundation under Rule 902(11), the

12  custodian of the records need not have personal knowledge of the

13  actual creation of the document.  United States v. Adefehinti,

14  510 F.3d 319, 325 (D.C. Cir. 2008).  Further, a record of which a

15  firm takes custody is thereby "made" by the firm within the

16  meaning of Rule 902(11), and thus is admissible if all the other

17  requirements are satisfied.  Id. at 326 (in mortgage fraud case,

18  holding that loan applications, sales contracts, and other

19  documents received and relied on by banks in lending decisions

20  were business records of the banks); see also United States v.

21  Childs, 5 F.3d 1328, 1333 (9th Cir. 1993) (documents kept by

22  business in ordinary course were records of that business, even

23  though not made by that business).

24      The use of certifications under Rule 902(11) does not

25  violate the Confrontation Clause of the Sixth Amendment, because

26  business records are not testimonial.  See Adefehinti, 510 F.3d

27  at 328 (citing Crawford v. Washington, 541 U.S. 36, 56 (2004);

28  United States v. Ellis, 460 F.3d 920, 927 (7th Cir. 2006)).

1   Given that business records themselves do not fall within the

2   Confrontation Clause, it would be odd to hold that the

3   foundational evidence authenticating the records does.

4   <u>Adefehinti</u>, 510 F.3d at 328.

5        Here, the government intends to introduce various types of

6   documentary evidence.  All such evidence will be properly

7   authenticated, primarily by certifications under Rule 902(11).

8   On February 26, 2009, the government first informed defendants

9   that it intended to use such certifications.  On May 13, 2009,

10  the government made certifications from 33 businesses available

11  to defendants.  On May 29, 2009, the government produced the

12  certifications (marked as Government Exhibits) to defendants.

13  The government asked defendants to stipulate to the admission of

14  a limited amount of documentary evidence, but defendants refused.

15  **C.   Duplicates**

16       A duplicate is admissible to the same extent as an original

17  unless (1) a genuine question is raised as to the authenticity of

18  the original, or (2) under the circumstances, it would be unfair

19  to admit the duplicate instead of the original.  Fed. R. Evid.

20  1003; <u>United States v. Smith</u>, 893 F.2d 1573, 1579 (9th Cir.

21  1990).  Here, many of the government's exhibits are duplicates of

22  the originals.  For example, the government intends to introduce

23  microfiche copies of bank records, as well as photocopies of real

24  estate records.

25  **D.   Expert And Opinion Testimony**

26       The admission of expert testimony or lay witness opinion

27  testimony is within the discretion of the trial judge and will

28  not be disturbed unless "manifestly erroneous."  <u>United States v.</u>

1   Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982); United States v.

2   Skeet, 665 F.2d 983, 985-86 (9th Cir. 1982).  An expert's opinion

3   may be based on hearsay or facts not in evidence, where the facts

4   or data relied on are of the type reasonably relied on by experts

5   in the field.  Fed. R. Evid. 703.

6       Opinion testimony by lay witnesses is admissible if it is

7   rationally based on the perception of the witness and helpful to

8   a clear understanding of his or her testimony or to the

9   determination of a fact in issue.  Fed. R. Evid. 701; United

10  States v. Langford, 802 F.2d 1176, 1179 (9th Cir. 1986).

11      Here, the government intends to call Ronald Buss as an

12  expert witness in real estate appraisals.  The Court previously

13  granted the government's motion in limine to admit Mr. Buss'

14  testimony.

15  **E.   Charts And Summaries**

16      The contents of voluminous writings, recordings, or

17  photographs which cannot conveniently be examined in court may be

18  presented in the form of a chart, summary, or calculation.  Fed.

19  R. Evid. 1006.  The admission of summaries of voluminous books,

20  records, or documents offers the only practicable means of making

21  their contents available to judge and jury.  Id., Advisory

22  Committee Note.

23      A chart or summary may be admitted as evidence where the

24  proponent establishes that the underlying documents are

25  voluminous, admissible, and available for inspection.  See United

26  States v. Meyers, 847 F.2d 1408, 1411-1412 (9th Cir. 1988).

27  Summary charts need not contain the defendant's version of the

28  evidence and may be given to the jury while a government witness

27

1  testifies concerning them.  <u>See</u> <u>United States v. Radseck</u>, 718

2  F.2d 233, 239 (7th Cir. 1983); <u>Barsky v. United States</u>, 339 F.2d

3  180, 181 (9th Cir. 1964).

4      Summary charts may be used by the government in opening

5  statement.  Indeed, "such charts are often employed in complex

6  conspiracy cases to provide the jury with an outline of what the

7  government will attempt to prove." <u>United States v. De Peri</u>, 778

8  F.2d 963, 979 (3rd Cir. 1985) (approving government's use of

9  chart); <u>United States v. Rubino</u>, 431 F.2d 284, 290 (6th Cir.

10  1970) (same).

11      In addition, summary charts are admissible under Fed. R.

12  Evid. 611(a).  <u>United States v. Gardner</u>, 611 F.2d 770, 776 (9th

13  Cir. 1980) (in tax case, use of chart summarizing defendant's

14  assets, liabilities, and expenditures "contributed to the clarity

15  of the presentation to the jury, avoided needless consumption of

16  time and was a reasonable method of presenting the evidence").

17      A summary witness may properly testify about and use a chart

18  to summarize evidence that has already been admitted.  The court

19  and jury are entitled to have a witness "organize and evaluate

20  evidence which is factually complex and fragmentally revealed."

21  <u>United States v. Shirley</u>, 884 F.2d 1130, 1133-34 (9th Cir. 1989).

22      Here, the government intends to use several sets of summary

23  charts and diagrams.  The Court previously granted the

24  government's motion <u>in limine</u> to admit the summary testimony and

25  corresponding charts and diagrams of Howard B. Grobstein (a

26  certified public accountant and certified fraud examiner),

27  Special Agent Robert S. Sterling of the Internal Revenue Service,

28  and Special Agent Amy Oakes of the Federal Bureau of

1   Investigation.  These witnesses will provide summary testimony

2   concerning flows of funds, payments to defendants, properties

3   purchased, and appraisals generated during the mortgage fraud.

4   Additionally, when presenting testimony from representatives of

5   the victim lenders, the government will use summary charts that

6   depict the lenders' losses.  The government intends to introduce

7   these charts and diagrams into evidence.  The government may also

8   use these diagrams and spreadsheets, and/or others, in its

9   opening statement, closing argument, and while presenting

10  evidence.

11  **F.    Hearsay**

12      **1.    Defendants' Statements**

13      Under the Federal Rules of Evidence, a defendant's statement

14  is admissible only if offered against him by the government; a

15  defendant may not elicit his own prior statements.  Fed. R. Evid.

16  801(d)(2)(A); United States v. Ortega, 203 F.3d 675, 682 (9th

17  Cir. 2000).

18      Here, defendants made statements to various witnesses,

19  including co-conspirators, real estate agents, attorneys, and

20  others.  The government will call those witnesses to testify to

21  the statements.  However, some portions of defendants' statements

22  were self-serving, exculpatory, and unreliable.  If defendants

23  attempt to elicit such portions of their own prior statements by

24  cross-examining the government's witnesses, they will be

25  attempting to elicit inadmissible hearsay.  The government will

26  object to any such questions.

27

28

### 2.   Co-Conspirator Statements

Statements by one conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such statements are not hearsay.   Fed. R. Evid. 801(d)(2)(E).

Rule 801(d)(2)(E) requires a foundation that: (1) the statement was made during the life of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's statement itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it.   Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987).

The government must prove by a preponderance of the evidence that a statement is a co-conspirator statement in order for the statement to be admissible under Rule 801(d)(2)(E).   Bourjaily, 483 U.S. at 176; United States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir. 1988).

The trial court has discretion to determine whether the government may introduce co-conspirator statements before establishing the conspiracy and the defendant's connection to it. United States v. Loya, 807 F.2d 1483, 1490 (9th Cir. 1987).   The court may allow the government to introduce co-conspirator statements before laying the required foundation under the condition that the statements will be stricken if the government ultimately fails to establish that the defendant was connected to the conspiracy.   United States v. Spawr Optical Research Inc., 685 F.2d 1076, 1083 (9th Cir. 1982).

1    Once a conspiracy is shown, the government need present only

2  slight evidence connecting a defendant to the conspiracy.  <u>Crespo</u>

3  <u>de Llano</u>, 838 F.2d at 1017.

4    To be admissible under Fed. R. Evid. 801(d)(2)(E) as a

5  statement made by a co-conspirator in furtherance of the

6  conspiracy, a statement must further the common objectives of the

7  conspiracy or set in motion transactions that are an integral

8  part of the conspiracy.  <u>United States v. Yarbrough</u>, 852 F.2d

9  1522, 1535 (9th Cir. 1988).  The courts have interpreted the "in

10  furtherance of" requirement broadly.  <u>Id.</u>

11    Statements made with the intent of furthering the conspiracy

12  are admissible whether or not they actually result in any benefit

13  to the conspiracy.  Thus, co-conspirator statements need not be

14  made to a member of the conspiracy to be admissible under Rule

15  801(d)(2)(E).  <u>United States v. Schmit</u>, 881 F.2d 608, 612 (9th

16  Cir. 1989).

17    Here, various co-conspirators -- all of whom have pleaded

18  guilty, and many of whom will testify -- made statements to each

19  other and to other witnesses during the life and in furtherance

20  of the conspiracy.  These included statements about defendants'

21  conduct and roles in the conspiracy.  The government intends to

22  introduce these statements for their truth under Rule

23  801(d)(2)(E).  Due to the government's order of proof, it may be

24  necessary for the government to elicit some of these statements

25  before the government has finished presenting all of its evidence

26  establishing the conspiracy and defendants' connection to it.  In

27  that event, the government will ask the Court to admit the

28  statements conditionally.

### 3.   Prior Testimony

A prior statement of a trial witness that (1) is inconsistent with the witness' trial testimony, and (2) was given under oath subject to the penalty of perjury at another proceeding, is not hearsay, provided that the witness is subject to cross-examination concerning the statement.   Fed. R. Evid. 801(d)(1)(A).

Since prior inconsistent statements that come within Rule 801(d)(1)(A) are defined as not being hearsay, they may be admitted as substantive evidence for the truth of the matter asserted, and not merely for impeachment purposes.   United States v. DiCaro, 772 F.2d 1314, 1321 (7th Cir. 1985).   Where the witness claims a partial loss of memory in his testimony at trial, his prior sworn testimony is admissible under Rule 801(d)(1)(A).   Id.   The word "inconsistent" in Rule 801(d)(1)(A) does not include only statements diametrically opposed to or logically incompatible with the trial testimony.   Id. (citing United States v. Williams, 737 F.2d 594, 608 (7th Cir.1984)). Rather, particularly in a case of manifest reluctance to testify, if a witness has testified to certain facts in a prior sworn proceeding and forgets them at trial, his prior testimony falls squarely within Rule 801(d)(1)(A).   Id.

Here, many of the government's trial witnesses gave prior sworn testimony to the grand jury.   If their trial testimony is inconsistent with their grand jury testimony, or if they forget the facts about which they testified before the grand jury, the government intends to introduce their grand jury testimony for the truth of the matters asserted therein, under Rule

801(d)(1)(A).

**4.   Business Records**

Fed. R. Evid. 803(6) exempts from the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

A document is admissible under this rule if two foundational facts are established: (a) the document was made by, or from information transmitted by, a person with knowledge at or near the time of the incident recorded, and (b) the document was kept in the course of a regularly conducted business activity.   United States v. Ray, 920 F.2d 562, 565 (9th Cir. 1990); Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 717 (9th Cir. 1990).

In determining if these foundational facts have been established, the court may consider hearsay and other evidence not admissible at trial.   Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily v. United States, 483 U.S. 171, 178-179 (1986).

The foundation may be established either through a custodian of records or "other qualified witness."   The phrase "other qualified witness" is broadly interpreted to require only that the witness understand the record keeping system.   Ray, 920 F.2d at 565.

The use of a computer to create or store business records is immaterial to the analysis under Rule 803(6).   It is immaterial

33

1 | that the business record is maintained in a computer rather than

2 | in company books.   <u>United States v. Catabran</u>, 836 F.2d 453, 457

3 | (9th Cir. 1988).

4 | In this case, the government intends to introduce various

5 | business records under Rule 803(6), including via certification

6 | as provided for under Rule 902(11).   <u>See</u> Part V.B above.

7 | **5.   Official Public Records**

8 | Records of public offices or agencies, setting forth the

9 | activities of the office or agency, are not excluded by the

10 | hearsay rule, even though the declarant is available as a

11 | witness.   Fed. R. Evid. 803(8).

12 | Here, the government intends to introduce various official

13 | public records, including FDIC certificates and recorded deeds

14 | from recorder's offices of various counties.   These records are

15 | admissible for the truth of the matters asserted therein under

16 | Rule 803(8).

17 | **G.   Hostile Witnesses And Witnesses Identified With Adverse
   Parties**

18 |

19 | When a party calls a hostile witness or a witness identified

20 | with an adverse party, interrogation may be by leading questions.

21 | Fed. R. Evid. 611(c).

22 | Rule 611(c) allows the use of leading questions on direct

23 | examination "as may be necessary to develop the witness'

24 | testimony."   <u>United States v. Cisneros-Gutierrez</u>, 517 F.3d 751,

25 | 762 (5th Cir. 2008) (given the extent of witness' memory

26 | problems, which appeared to have been feigned, and witness'

27 | hostility, district court did not abuse its discretion in

28 | designating witness as adverse witness and allowing government to

1  ask him leading questions).

2      Situations where leading questions are allowed are:
3  (1) where a witness is hostile; (2) where a witness is reluctant
4  or unwilling; and (3) where an adult witness has difficulty
5  communicating.  United States v. Olivo, 69 F.3d 1057, 1065 (10th
6  Cir. 1995) (affirming district court's designation of cooperating
7  conspirator, called by government, as hostile witness).  A
8  district court's decision to designate a witness as a hostile
9  witness is reviewed for abuse of discretion, and the district
10  court has the widest possible latitude.  Id.

11     Here, the government will likely call witnesses from
12  entities affiliated with, and/or owned in part by, Babajian and
13  Grasso.  These include witnesses from Prudential California
14  Realty and California Title Company.  Babajian and Grasso had
15  ownership interests in both companies during the fraud.  See
16  Indictment ¶ 11.  The government may also call Babajian's and
17  Grasso's asset managers to testify about defendants' division of
18  funds.  The government may ask the Court to designate these
19  witnesses as hostile and/or adverse, and permit leading
20  questions, depending on the witnesses' testimony and demeanor.

21  **H.   Impeachment And Rehabilitation Of Witnesses, Including
22       Defendants, Under Federal Rules Of Evidence 608, 613, and
       801**

23     Specific instances of conduct of a witness may, in the
24  court's discretion, be inquired into on cross-examination of the
25  witness only if the conduct concerns his character for
26  truthfulness or untruthfulness.  The "bad acts" may not, however,
27  be proved by extrinsic evidence.  Fed. R. Evid. 608(b).

28

1    If the defendant testifies, the government may cross-examine

2  him by asking him to admit prior bad acts concerning truthfulness

3  or untruthfulness.  United States v. Jackson, 882 F.2d 1444, 1448

4  (9th Cir. 1989).  If the defendant denies committing the prior

5  bad acts, the government may, under Federal Rules of Evidence

6  613(b) and 801(d)(2)(A), confront him with extrinsic evidence

7  showing that in fact he did commit the prior bad acts.  Jackson,

8  882 F.2d at 1448-49.  If the extrinsic evidence is the

9  defendant's own statement, the extrinsic evidence is admissible

10  under Federal Rule of Evidence 801(d)(2)(A).

11    Prior consistent statements are admissible to rebut a charge

12  of recent fabrication or improper influence or motive.  Fed. R.

13  Evid. 801(d)(1)(B); United States v. Stuart, 718 F.2d 931, 934

14  (9th Cir. 1983).  Here, the Court previously granted the

15  government's motion in limine to admit prior consistent

16  statements that co-conspirator Jamieson Matykowski made to

17  witness Barry Sloane, subject to the requirements of Rule

18  801(d)(1)(B).

19  I.   Cooperating Co-Conspirators

20    The government may not vouch for the credibility of its

21  witnesses by presenting the jury with personal assurances of the

22  witness' veracity.  However, a reference to the "truthful

23  testimony" provisions of a witness' plea agreement with the

24  government does not constitute vouching if it is made in response

25  to an attack on the witness's credibility because of his plea

26  bargain.  United States v. Monroe, 943 F.2d 1007, 1013 (9th Cir.

27  1991).  To introduce such a "truthful testimony" provision of a

28  plea agreement, the government need not necessarily wait until

36

re-direct examination, after the witness' credibility has been attacked on cross-examination.  Instead, where in opening statement the defendant attacks the witness' credibility because of the witness' plea agreement, the government may introduce the "truthful testimony" provision in direct examination of the witness.  Id. at 1014 (because government introduced the "truthful testimony" aspects of cooperator's plea agreement only after defendant had attacked cooperator's credibility in opening statement, government did not vouch for cooperator).

Here, the government intends to call several cooperating co-conspirators.  These witnesses have plea agreements with the government, including "truthful testimony" provisions.  The government will introduce these provisions at the appropriate time, depending on defendants' opening statements and cross-examinations.

J.    Cross-Examination Of Defendants

A defendant who testifies at trial waives his right against self-incrimination and subjects himself to cross-examination concerning all matters reasonably related to the subject matter of his testimony.  The scope of defendant's waiver is co-extensive with the scope of relevant cross-examination. United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether the government's questions are reasonably related to the subjects covered by the defendant's testimony") (internal punctuation omitted).

1    Federal Rule of Evidence 404(b) "restricts the use of

2  evidence solely for purposes of demonstrating a criminal

3  proclivity.   It does not proscribe the use of other act evidence

4  as an impeachment tool during cross-examination."  <u>United States</u>

5  <u>v. Gay</u>, 967 F.2d 322, 328 (9th Cir. 1992).

6                                VI.

7                            CONCLUSION

8    The government respectfully requests permission to file

9  additional trial memoranda if necessary.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28